Good morning, Council. Our case at this time is case number 414-0315, the people of the State of Illinois v. Lucas-Garrett. For the appellant, we have Mr. Wilson, and for the appellee, we have Mr. McNeil. Are you ready to proceed, Council? Mr. Wilson? Good morning, Your Honors. I represent Lucas-Garrett on behalf of the Office of the State of Illinois Defender. Lucas, his new wife, and his two-year-old daughter went to the Secretary of State facility in Clinton, Illinois in September of 2013 so his wife could have her name changed on her driver's license. At some point after the Garretts left, the staff at that facility realized that some money was missing and Lucas was arrested. He wasn't arrested and charged with theft, however. Instead, the State alleged that Lucas used his two-year-old daughter to facilitate a burglary. While Lucas was convicted of both contributing to the delinquency of a minor and burglary, an absence of evidence and a number of trial errors requires his convictions to be reversed. The State, both during trial and on appeal, have advanced a narrative regarding contributing to the delinquency of a minor charge that isn't necessarily accurate. What I mean by that is the State has, at trial and in its brief, argued that at some point Lucas leaned down and spoke to his two-year-old stepdaughter, N.J., and immediately after that she ran towards a room where money was allegedly stolen. The State points this out, arguably, to satisfy one of the requirements of the contributing to the delinquency of a minor statute. That being that the State has to prove that the defendant solicited, compelled, or directed the minor to perform some sort of criminal act or assistant in a criminal act. The evidence is inconsistent with the State's position. What the evidence is in this case, and we have a videotape that recorded almost the entirety of the Garrett's visit to the Secretary of State's office, and the video shows at one point Lucas bend down and get near his two-year-old stepdaughter's face. We don't see his lips move. We don't see him say anything. In fact, in the video, it's mostly the side profile or the rear of his head that is visible. No witness at the Secretary of State facility testified that they heard him say anything. In short, there's absolutely no evidence that he did anything that would have directed, solicited, or compelled this young lady to run back towards that office to facilitate the charge of burglary. And absent any evidence that that, in fact, happened, and again, we have a videotape showing that it, in fact, did not, there's no evidence to satisfy the State, the requirements of the elements for the contributing to the delinquency of a minor, and so that conviction needs to be vacated. Likewise, the State failed to establish that Lucas committed a burglary. There are generally two ways that burglary is charged in the state of Illinois. A person is guilty of burglary if he either enters a building without authority and with the intent to commit a theft or felony, or remains in a building without authority with the intent to commit a theft or felony. At trial, and I don't believe the State contests it here, the State essentially said they had no problem with the idea that he entered that building with authority. The evidence showed that when he went to the Secretary of State's facility, it was to assist his wife in having her name changed on the driver's license. So the State couldn't charge him merely with entering a building with the intent to commit a theft or felony. Additionally, by the time of trial, there was no longer a charge stating that Lucas remained within the building with the intent to commit a theft or felony. That charge, that part of the original charging instrument did not make its way to trial. And instead, the State charges this sort of hybrid theory that he entered the facility with lawful authority, but then he proceeded to go to part of the facility that he entered without lawful authority. Why is that hybrid? Well, for, again, two reasons. The first being that it's an improper way of interpreting the statute, the portion of the statute, or any part thereof. Obviously, if somebody enters a building, they're already in that building. How about knowingly and without authority entering a part of a building with the intent to commit a theft? Correct. Why wouldn't that cover what happened here? Because if that position is adopted, then the result is something the legislature couldn't have intended. And what I mean by that is, if I go to a house to burgle that house, and I break in the front door, I walk through the living room, walk through the kitchen, down the hallway to a bedroom, for instance, and I steal a necklace. Then I turn around and I walk directly back the same route. Under the State's theory, I haven't committed a burglary. I've committed three burglaries. I've gone into three distinct parts of that residence that I wasn't authorized to go into with the intent to commit a theft or felony therein. They could charge me with burglary for going into the living room, into the kitchen, and into the bedroom. That is not what the legislature has intended here. Well, how about this case? Why wouldn't the legislature have intended that what happened here should constitute a burglary? Because they have other ways of charging it. That doesn't answer my question, that they have other ways of charging it. Why doesn't the charge that occurred here appropriately address what your client did? Let's assume it's an office building. It's the Stratton office building across the street. He walks in the front door, and while there, knowingly and without authority, enters a part of the building with the intent to commit therein a theft. Why isn't that a burglary? Because there's a statute for that. It's the unlawfully remaining within. He didn't unlawfully remain within. He entered the Stratton office building with the intent. That was lawful. But while there, he decides, you know, no one's paying any attention, and he walks down a hallway and he sees some person sitting at a desk, and he then enters this office and steals. Why isn't that a burglary? Well, it is for unlawfully remaining therein. He goes into an area, he goes into this office that he knows he's not supposed to be in, and he commits the burglary there. That's why the legislature has this unlawful remaining provision. Unlawful remaining deals with the guy who enters the store and hides until they close it and they don't know he's there, and then they shut up the store and he's still inside. That's the unlawfully remaining aspect. There have been cases that have interpreted it differently than that, as well, as someone who... But why should the unlawful remaining aspect cover the Stratton office building or any other office building? He's not remaining anywhere. He's lawfully, he's walking around and he sees an opportunity to commit a burglary by entering some office and steal some stuff. It seems to me to be a real strained interpretation to say, well that's a burglary by remaining within. What's he remaining within? Well, he's remaining within the, obviously he's not outside of the Stratton building when he leaves the office. Well, there was no problem with his being in the Stratton building in the first place. That's not the issue. The issue is this part of the Stratton building did he enter? Which he would have entered without authority, which is kind of the second part of the argument here. Well, he did enter it without authority. It's a part of the building. He entered that part of the building with intent to commit theft. Why isn't that a burglary? And that's the second part of the argument here, is that if this court disagrees and if the court adopts the theory that you're proffering, the second part of the argument is that there was no evidence in this case that the part of the building that Lucas went into, the office or the room that he went into, was a part of the building. He was unauthorized to be inside it. Why isn't that a question of fact for the jury? Well, and that's, admittedly, it is in the light most favorable to the state as far as that second part of the argument. But the reason... So if the recital of the Lord says no admittance or limited to official entry only, then that would be okay? And without it, it isn't? I'm sorry, it would be okay in what sense? Okay that the state would then have demonstrated that he has no legitimate right to go into that area? I think that's a much closer question to yes. There has to be some indication that he is not permitted to be in that area in order to sustain the state's burglary count here. And the room that we are talking about in this case was directly down a public hallway... Well, give me an explanation that you would give to the jury on the legitimacy of his expectation that he could go into this room down the hallway in the Secretary of State's office. Gee, I thought he could do this because... It's directly across from the bathrooms, which are a public area. He had been in that room earlier when he was retrieving his daughter. No one told him he could not go into that room. The door was open, the lights were on. If he was a member of the public, perhaps he would go into that room. You know, it's a Secretary of State's facility. People look up, you know, need license information, background information, fill out forms and that type of thing. The video shows there's a computer in that room. There are purposes with which someone may view that room and think, that's a room that I can go into to accomplish the goals of whatever the reason is that I'm here. And the reason he initially went in there was to retrieve his daughter. That was earlier. Correct. But that wasn't the basis of this charge. It was earlier, but no one at that time told him that he was prohibited from going into that room. In fact, the little girl, he'd been chasing her throughout the entirety of the office. She had been behind the main counter. She had been in the other rooms of the Secretary of State facility. She'd been running all around the waiting room, and it was his job that day to follow her wherever she went. And the staff never once said, no, you can't come behind the counter. No, you can't come behind the counter to get her. No, you can't go into that office. We judge whether a part of the building is open for public use by the steps that someone has taken to show that it is not. In People v. Richardson, for example, a case that's cited in the brief, in that case there was a private or employee-only sign, and the court said, well, the defendant went into that room. He would have known that that wasn't open for public use. Well, this is a matter of circumstantial evidence, isn't it? Isn't the jury instructed they can consider their common experiences in life when displaying this evidence, and whether the circumstances of this particular situation are sufficient to prove that the defendant had no authority, indeed knew he had no authority, to enter this part of the building? The jury is allowed to consider their own experiences. However, the evidence in this case wasn't limited to that, and what I mean by that is, the state apparently concerned that they hadn't offered enough evidence to show that this room was off-limits to the general public, also felt that they had to call Joseph Foster and question him about the use of the room. Joseph Foster was an investigator with the Secretary of State Investigator Unit. He was the one that investigated this alleged burglary, and he viewed the videotape just like the jury did. There's no evidence that he spent any considerable time in the Clinton facility prior to this incident. He may never have been there. But when he got up to testify, the state said, after viewing this video, do you have any conclusions about that room? And he said, I have the conclusion that that is a room. I have the quote here, that is not one for civilians or the general population to go into. Someone who was sitting essentially in the same position that the jurors were, someone who had the same evidence at their disposal that the jury did, someone who had viewed the videotape just as the jury had done, is now coming and commenting on an ultimate issue of fact to the jury. This wasn't a case where the jury can say, or that we can say with any confidence, that the jury relied on the properly admitted evidence to render a verdict that this room was not open to the public. Instead, we have the state, for lack of a better word, tainting their consideration of this fact, this factual matter in this case, by calling a witness who improperly testified that that room was not open to the public. And I say, I can say improperly testified that that room wasn't open to the public, because the state has conceded that. The state has said that it was improper for the state to have questioned Joseph Foster about that. It's a violation of the silent witness rule. The jury wasn't left to their own... What's left of the silent witness rule after people beat Thompson? Thompson... Which, of course, was decided after you wrote your brief, so... And Thompson hasn't been cited, so... Well, we know of it. Oh, no, I'm just saying, I'm just citing it in response to this court's question. So, go ahead. Thompson is a case, my understanding of the facts at least, is a police officer who knew a defendant beforehand, was able to view a video, and could testify regarding the identification of the defendant on the video. The operative fact here is the officer had a prior knowledge of the defendant before he offered his testimony. He was essentially giving identification testimony. What we have here is an entirely different situation. We have someone who, again, may never have been in the Clinton facility before this occurred and he was called to investigate this. He watches a video, just as the jury could have watched the video. There's no evidence that he knew Mr. Garrett, there's no evidence that he had ever seen his office before, there's no evidence that he talked to any of these people before. And he gets up on the stand, someone with the same informational content, you know, the same knowledge that the jury did, and he comments on an ultimate issue of fact that being, no, the general public isn't allowed to go in that room. I can tell that from looking at the video. So, Thompson really doesn't limit this discussion at all because we don't have someone first making an identification of a person, and we don't have somebody making an identification based on knowledge that they had prior to the time that they're making that identification. Foster's knowledge came forth only as a product of his investigation into this case. He didn't have a prior working knowledge of any of the parties involved or any of the facilities involved here. Similarly, Thompson was in no position to comment on whether Lucas was seen carrying something out of that office that day. The state asked him, does it look like he's carrying something, and Foster says, why, yes it does. Again, that is the sort of thing that a jury should have been left to decide. This isn't the sort of issue that, where the state can call a witness who can view the exact same videotape the jury can view and can then give their opinion on that when they have no prior knowledge of it. Now, not only did Foster testify that he believed he saw Lucas carrying something from the room, but also Miss Maddox, who worked at the Secretary of State facility, identified Lucas carrying something from that room. Not only that... What was the problem with Maddox's testimony? As far as her identification of what he was carrying? Yes. Her testimony was, one, really no different than Foster's testimony, because she wasn't there in person to see Lucas carry anything from that room. But possibly more importantly... Wasn't she the one who bundled the cash and checks on the top of the desk? She was the one who put the cash and the checks together, yes. So, when she identified the bundle in the defendant's hand as looking like that, why wasn't she in a better position than the average juror to make that assessment? Well, really three responses, if I can remember them all. She testified that what she saw was him carrying a wad of cash from that room. The evidence, her testimony prior to that declaration was that she had stacked the bills. So, if she saw anything, it should have been a stack of bills that she was carrying out. But more importantly, I would completely agree that there would be no problem with Maddox's testimony, or arguably that there wouldn't be a problem with it. It would be a different case. If she had testified, yes, he's carrying out a wad of cash, and I can identify that wad of cash. Because whenever I bundle money at the Secretary of State's office, I use four rubber bands and I put them around the money in a certain way, and I can identify that that's the way I bundled that money that day. If there was some characteristic that was different from any other money in the world that she could identify, yes, it may very well be probative. So that's the requirement before the trial court could admit that testimony? To say to the exclusion of any other bundle of cash in the world? Well, no. Why are you arguing that to us? Well, what I'm saying is if there is one item or a set of items that is completely common that anyone has a common experience handling, it's money. Maddox's testimony wasn't that. There was a three-inch stack of $20 bills, and that's the same three-inch stack of $20 bills that he's carrying out with him right there. She didn't identify anything specific to that money. She was in no better place to identify. Wasn't her testimony that the object in the defendant's hands as shown by the video was consistent with the pile or wad of cash in the checks that she had placed in the desk drawer? She testified that. Is that a yes? I'm sorry? Are you answering yes to my question? I don't remember what the specific testimony. Are you reading the testimony from the transcript? Yes. Can you reread that for me, please? She testified that the object in the defendant's hands was consistent with the pile or wad of cash in the checks that she had placed in the desk drawer. And if it is consistent with the pile or wad of cash that she placed in the desk drawer, she still hasn't identified it as the specific object that he's carrying from her. So that's not good enough to let her testify about it? To assist the trier of fact who had never seen this pile of cash, but she had. Well, there's, I mean, it may be semantics, but there's not anything necessarily saying that she had ever seen it in the form that the defendant was carrying it. Well, the question is, is her testimony admissible? Is this potentially helpful for the jury? You're claiming it is not because it's not sufficiently specific? Well, and I'm not sure, Your Honor, when you were reading that quote, may I ask what that is? Is that from the transcript or is that from one of the briefs? Well, it's, she had testified that the quote is consistent with the pile of cash in the checks that she had put in the drawer. And I see my time's expired. May I just respond to that? Yeah. She, I believe, if it's the testimony I'm thinking of, she later testifies that it wasn't a wad of cash, but it was money that was stacked on top of checks that she had. So the initial testimony, if it's the testimony I'm recalling that you're testifying to, she later clarified that in her testimony. Thank you, Mr. Hulsey. Thank you. Mr. O'Neill? May it please the Court? Counsel? As for the sufficiency of the evidence argument, argument number one, contributing to the delinquency of a minor, of course we look at this issue with the high standard of review that we look at all the evidence in the light most favorable of the State. More importantly to this case, we allow reasonable inferences in favor of the State as well. Well, opposing counsel is taking the position that there's no evidence on this issue to look at in the light most favorable to the State. The video evidence itself shows a child running around the Secretary of State facility, defendant retrieving the child multiple times. One time, retrieving the child in his private office, looking in the area where Maddox was counting cash earlier, goes back to the counter with his wife. The three of them are standing there. The defendant then bends down his mouth to N.J.'s ear. One time, N.J. still stands there. Defendant then bends down again, his mouth to N.J.'s ear. Then the child instantly runs to the back. So, is it correct that you cannot see the mouth of the defendant moving? You cannot see the mouth of the defendant moving, but I would say not only is it a reasonable inference, it's almost the only logical inference that he is speaking into N.J.'s ear. Could he have been giving her a little peck, a little kiss? Sure. Is there anyone who can testify that they heard him say something, even heard his voice at that time? No one testified of any audio of his voice. However, the video evidence, like I said, it's a reasonable inference at least. It's a reasonable inference that he commanded N.J. or solicited or directed her to run towards the back. The first time she ran into that back room, there's no claim that the defendant had any role in that, is there? No. In the video evidence, if you look at it, you can sort of see when he goes to retrieve her the first time, he takes a little bit longer than a normal look into the area where the cash would have been. It's not constructed by the camera angle, but when he's grabbing the child, he's also looking at the desk drawer where the cash would have been at that time. Given that she ran there of her own volition the first time, doesn't that diminish the claim that she did so at the direction of the defendant just a few minutes later? Well, the second time she didn't even run into the office, but it's also, if you look at the video, I mean, she's wandering around aimlessly throughout the beginning part of the video. This time, she's almost running to a place where she was directed to run. Of course, there's no evidence or suggestion by any audio of that, but it's a reasonable inference for the jury to make, is that she was running because her dad just told her to run to the back. The jury also here, the state didn't really concentrate on this angle in closing argument. However, the element that is in dispute here is whether the defendant solicited, compelled, or directed NJ in order to facilitate the burglary. Defendant grabs her during the burglary. She's not in the room. Defendant grabs her near the bathroom and then takes her into the room. That's when he committed the burglary. A jury properly instructed on the elements of burglary here could easily find that he compelled her. I mean, he was taking her with his hand into the room to commit the burglary. Of course, she was facilitating this because she would obviously be his excuse if he was coming out of the room or asking why he was back there while I was retrieving my daughter again. That is another way the jury could have found defendant guilty beyond a reasonable doubt of burglary or a contribution to the delinquency of a minor based on the evidence presented. We have to assume that the jury that was properly instructed followed those jury instructions. Here they were properly instructed on the elements of burglary and they could have found defendant guilty beyond a reasonable doubt by that angle even though the state didn't really concentrate on that angle in its closing argument. Of course, there's two reasonable ways for a defendant to be found guilty of that charge. One, the reasonable inference that when he was bending down his mouth to her ear that he did whisper and that she did whisper to command her to go back to the back. That of course facilitated the burglary. Or that him grabbing her and taking her back into the room to take the cash was compelling her and that facilitated the burglary as well. Either way, defendant, there was sufficient evidence for the contributing to the delinquency of a minor charge. As for the second argument that the defendant didn't, the state needed to prove the defendant didn't have authority to enter the entire building, the best defense against that is the plain language of the burglary statute. The burglary statute clearly calls for either unauthorized entry into a building or a separate, a certain part of a building. That's how defendant was charged in this very case. Defendant was charged with entering a certain part of a building, specifically this office and the Secretary of State facility. This court's decision in Davis, which I relied on in my brief, is directly on point. Davis was the case. Defendant goes into an open public office front of a building that's open to the public, so he had authorized entry into that front. Then goes through a 5 to 15 foot wide doorway. No door, no signage saying that it's private, but it is a different office. It's a construction company office in the back of the building. He goes through there to steal a typewriter, argued on appeal that since he had authority to go through the front door, therefore he wasn't guilty of burglary. This court rejected that and important to this case, this quote, Illinois courts have recognized that entry into certain separate areas of a building with the requisite intent could support a burglary charge. The statute implements this logic by providing entry into certain structures or any part thereof as an element to burglary. Here's the money quote, any discussion by the state or the defense regarding the front door is therefore immaterial to proof of burglary. That's important here because, again, the defendant going through the front door of the Secretary of State is completely immaterial to his unauthorized entry into this office building. The Paraket case, which defendant cites in his reply brief, specifically distinguishes Davis in that way. It said Davis is inapplicable for two reasons. That case didn't involve a counter area and a store. It involved a whole separate office area. The Davis court held that although defendant made an unauthorized entry through the front door because Community Action Depot is open to the public, defendant made an unauthorized entry through the doorway into Consolidated Construction Company. So, therefore, the Paraket case really helps the state here by showing how similar this case is to Davis. The second problem with Davis, the Paraket court said, the state charged defendant in that case with knowingly and without authority entering into part of a building. And in Paraket, the defendant was charged with knowingly entering a whole building. Here, of course, defendant was charged with knowingly entering only a part of a building. So Davis is directly on point. And pursuant to Davis, defendant clearly was guilty of burglary. Also, there was sufficient evidence to prove defendant entered that room without authority. It was a private office. The video evidence shows that any reasonable person in defendant's position would know that this is a private office. Even more so in Davis. Davis had a wide, sort of like that doorway with no doors and no signage. Still, the court found that there was an unauthorized entry into that section. Here, this was a regular two-and-a-half or three-foot wide doorway with a door, leading into an obvious cluttered private office. More importantly, two employees testified that this was indeed private and the defendant didn't have authority to be in the room. One of the employees had worked there for 10 years and said that no one had ever mistakenly entered that room before. That's pretty strong evidence of what a reasonable person in defendant's position would think of as far as authority entering this room is concerned. So there was sufficient evidence to prove defendant entered that room without authority. As for the third argument, Paula Maddox's testimony was clearly admissible under Rule 701. The three qualifiers to Rule 701 is testimony is admissible  and is helpful to a clear understanding or determination of a fact and issue and not based on scientific, technical, or other specialized knowledge. Here, Maddox, on the video, she's counting the cash, the wad of cash that the defendant later stole. But the wad of cash itself was never shown on the video. It was obstructed, I think, by a plant as far as the angle of the camera is concerned or maybe the computer monitor. Either way, it's obstructed by the view as for where it's laying in the desk. And it could have been, as far as Maddox's testimony being valuable or probative, it could have been in a bank bag. It could have been coins that she was counting, quarter rolls. It could have been too many bills that it wouldn't fit discreetly in the defendant's right hand. There's multiple ways that this evidence was probative to the jury and it didn't invade the province of the jury because the jury didn't see the wad of cash in its state in the video. As for Foster's testimony, it was a harmless error, if anything. He testified the two subject parts of his testimony that were in dispute here. He testified that this office obviously wasn't open to the public. The more effective testimony in that realm were the two employees that specifically stated this office wasn't open to the public that already testified and one of them even saying that no one in her 10 years of work there had ever even mistakenly entered that room without authority. So clearly, Foster's testimony saying the exact same thing but less effective didn't affect the outcome of the trial at all. Foster also stated the defendant had something in his right hand when he left the office. The video evidence briefly but clearly showed that he did have something in his right hand. More importantly, the video also showed that he didn't have anything in his right hand when he entered the office that second time. Again, Foster's testimony really didn't affect the outcome of the proceedings in any way. I also just remembered as far as Paula Maddox's testimony was concerned, I'm not exactly sure how the transcript read, but I think it was a question of the state asking her if the object in the defendant's right hand was consistent with the wad of cash. And she confirmed that it was. It wasn't a direct, it wasn't Paula Maddox saying, yeah, and there's the defendant with the wad of cash that I was counting. She said it was consistent with the wad of cash that she had counted earlier. Again, this is probative because it could have been a huge bank bag. It could have been a little zip-up bank bag. It could have been a bag of coins or whatever. It wasn't. It was consistent with the size and appearance of the wad of cash she was counting earlier. As for the fourth issue, the sentencing argument, the Supreme Court in Casselberry recently abolished the void sentencing rule, which means that this can only be analyzed by this court under plain error. Plain error doesn't apply in this case. As Justice Steigman has written in Rathbone, Ehlers, Montgomery, plain error doctrine is not a general savings clause to be used by means which preserve all errors affecting substantial rights. Rathbone stated, Our Supreme Court has consistently emphasized the limited nature of the plain error exception. Plain error exists only when the essential fairness of a trial has been undermined. This occurs only in situations which reveal breakdowns in the adversary's system, as distinguished from typical trial mistakes. If anything, this was a typical trial mistake in sentencing a defendant to a concurrent 12-year sentence for burglary. Take Montgomery, for example, this court's case. The sentencing error there actually prejudiced the defendant. The trial court in that case used the same great bodily harm for all three convictions he had. Therefore, he was sentenced to 85% and sentenced to consecutive sentences in all three of his convictions. The defendant was prejudiced in that case, actually spending more time in prison. Still, this court held that it was forfeited and didn't reach the plain error analysis. Here, the defendant was not prejudiced at all. He wasn't convicted of a more serious crime. He wasn't serving any more prison time. He concedes that this issue was forfeited. He didn't file it in a post-sentencing motion pursuant to read in Section 581C within 30 days. So, the sentencing issue here is forfeited and it does not reach the level of plain error. If the court has no more questions. I don't see any. Thank you. Any rebuttal, Mr. Wilson? Yes, ma'am. The state is making a new argument now as to the contributing to a delinquency of a minor issue. There is nothing in their brief where they have argued that Lucas drug the NJ into this room and therefore that amounted to contributing to a delinquency of a minor. That is not in their brief. This is the first time I have heard of that argument, and so I would ask that this court disregard and strike that portion of the state's oral argument. As to their last point before I move on to the burglary, the appellate court in People v. Pfister looked at this exact same issue regarding the sentencing and they found that it was plain error and an error under Rule 615A, case directly on point, nearly the same facts. The sentences were different. They were more lengthy, but factually, same exact circumstance. So there is an error here. It was a 1993 Second District decision that predates all of the decisions by this court that have rejected that analysis? I'm not aware of the decisions that have rejected that analysis. The state hasn't cited them, but in the briefing, we are arguing Pfister under Rule 615A and that this is a matter of plain error as well. Moving to the burglary issue, when a jury is hearing evidence, they place certain degrees of weight based on the evidence that they're hearing. When you have an investigator coming in who is in the exact same position as the jury, someone who has just seen the same video the jury has, who has just heard the same evidence that the jury has, and that investigator says, oh yeah, in that room, that's not open to the public. That's an opinion that the jury is going to put weight onto. It's somebody that's looking at it from their perspective. The state could call in as many employees of that Secretary of State's facility as they wanted who would testify, well, we in 10 years haven't seen anybody go in that room. Well, one, there's no evidence that they work in that room or watch that room or would know if somebody goes in that room. But two, it's a question of what a reasonable person in a person in Lucas' situation would have thought. And clearly he went into that room once earlier. He didn't see any problem with going in and retrieving his daughter from that room. The mere fact that he went into it a second time, there's no evidence in this case that demonstrates that he would have any reason to believe that it was off limits to him. The state did ask Maddox a question. That being, is the object in the right hand of this person on the screen consistent with the pile or wad of cash and checks that you put into the desk? And she said yes. The reason that I am asserting that that was improper is Maddox is telling the jury what to see in that video. Maddox, who didn't view this in real time, she wasn't there when Lucas walked out of the office with something, according to her testimony, in his pocket. Instead she's telling the jury, oh yes, I'm viewing the same tape that you're going to see and it's my testimony that he's leaving with a pile or wad of cash. So the operative question may be, well what should she have testified to then? Well what she could have testified to is tell the jury the cash, I believe it was $303 or $308, were in the following denominations. It was a stack that was half of an inch thick. I put three rubber bands on it. And when I went back to my office later, it wasn't there. And then the jury can watch the video, just like Paula Maddox did, just like Joseph Foster did, and based on their viewing of the video, they can conclude whether or not what is in Lucas' hand is the money that Paula Maddox described. In this case, the defense counsel objected to Foster's telling the jury what he believed the video showed, but did he ever object to the testimony that Foster's statement that it's not a room for civilians or the general population to go into? Yes, he did. Well, these are two different matters. The judge I object to is testifying what the video shows, and the judge I object to is saying that this was a room into which the general public wasn't permitted to go. When the state initially began questioning Foster on his interpretation and narration of the video, the defense counsel objected they had a lengthy exchange and the court said, no, I'm going to overrule that objection. The state then went ahead and started questioning Foster. Defense counsel again said, judge, I believe this is improper. He should not be allowed to narrate the video. The judge said that objection is noted. It is overruled. You may continue and question him. So defense counsel did object to the state's question of Foster as to the narration of the video. I have nothing further? This court has any questions? No, no questions. Thank you. Well timed.